IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABEL BELMONTE, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:19-CV-2656-G-BK |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. The Court now considers Defendant's *Motion to Dismiss Plaintiff's Amended Petition and Brief in Support*, Doc. 27. Upon review, Defendant's motion should be **GRANTED**.

**I.  BACKGROUND**

Plaintiff filed this *pro se* lawsuit against his former employer, Defendant City of Dallas, for (1) race and national origin employment discrimination under Title VII and the Texas Labor Code, (2) violation of the 14th Amendment Equal Protection Clause, (3) violation of the Lilly Ledbetter Act, (3) breach of contract, and (4) violation of the Federal Service Labor-Management Relations Act ("FSLMRA") and Chapter 61 of the Texas Labor Code (the "Payday Act"). Doc. 3 at 5-7. The Court subsequently granted Defendant's motion to dismiss, Doc. 7, dismissing Plaintiff's § 1983, Title VII, breach of contract, FSLMRA, and Payday Act claims with prejudice, Doc. 18; Doc. 21. The Court dismissed Plaintiff's federal and state race and national origin employment discrimination claims without prejudice, however, granting leave to

amend. Doc. 18; Doc. 21. Plaintiff then filed his amended complaint[1], Doc. 22, and included a new claim for a DTPA violation. This motion followed.

Plaintiff, a Hispanic male and Mexican national, alleges that while working at Defendant's jail, he was required to perform additional tasks because he spoke Spanish but was not compensated for the extra work. Doc. 22 at 3-4. Plaintiff had to translate for Spanish-speaking prisoners and work nights and extra shifts because Defendant required every shift to have at least one Spanish-speaker, and he was often the only Spanish-speaker available. Doc. 22 at 4. Though Plaintiff sought additional pay for his linguistic skills and extra work, he never received any. Doc. 22 at 9.

## II.  APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citation and quotation marks omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

---

[1] In his amended complaint, Plaintiff reasserts his claims under the Lily Ledbetter Act, Doc. 22 at 9, and the Equal Protection Clause, Doc. 22 at 13, that the Court previously dismissed with prejudice. *See* Doc. 18 at 5-7; Doc. 21. These reasserted claims contain the same allegations as the original claims. As the Court did not grant leave to amend those claims, they are not addressed again here.

### III.  PARTIES' ARGUMENTS AND ANALYSIS

#### A.  Race and National Origin Discrimination

Plaintiff claims Defendant discriminated against him based on his race and national origin because Defendant did not pay him extra for using his Spanish language skills on the job. Doc. 22 at 10-11. Defendant argues that Plaintiff has failed to allege the essential factual basis required to state race and national origin discrimination claims. Doc. 27 at 13-14.

The Court analyzes Plaintiff's Title VII and TCHRA race and national origin claims together because the two contain identical allegations and analogous statutes and caselaw apply. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. Sch. Distr. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012)). Such claims can be dismissed together through one 12(b)(6) analysis. *See Lewis v. City of Dallas*, No. 3:16-CV-0259-N, 2016 WL 11474104, at *5 (N.D. Tex. Dec. 20, 2016) (Godbey, J.).

To properly allege a claim for both race and national origin discrimination, a plaintiff must plausibly plead two ultimate elements: (1) that he suffered an adverse employment action; and (2) the adverse action was because of Plaintiff's protected status. *See Cicalese v. Univ. of Tex. Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (detailing elements of Title VII race and national origin discrimination claims). Even liberally construed, Plaintiff's *pro se* complaint does not meet this pleading standard. *See Johnson v. Pfeiffer*, 821 F.2d 1120, 1122 (5th Cir. 1987) (*pro se* complaints must be held to a less rigorous standard than pleadings prepared by lawyers).

Language is not a racial or national origin trait and, thus, cannot be the basis of a race or national origin discrimination claim. *Garcia v. Gloor*, 618 F.2d 264, 268-71 (5th Cir. 1980). While language may be used as a covert basis for national origin discrimination, that is the exception rather than the rule. *Id.* at 268. And in those exceptional instances, such discrimination is focused on forbidding the use of a language as an expression of culture, not encouraging, or even requiring, the use of a specific language as part of someone's job. *Id.* at 270-71.

Although Plaintiff alleges that he is a Mexican citizen and is of Mexican descent, Doc. 22 at 3, he has not alleged any facts that suggest a disparity of treatment, an adverse action, or denial of income on account of being Mexican. To the contrary, Plaintiff's allegations suggest that any differential treatment was solely the result of his ability to speak Spanish. *See, e.g.* Doc. 22 at 4 ("If a co-worker did not speak Spanish, plaintiff [sic] would have to stop with the booking process of his prisoner and go translate for a co-worker. . ."). It is of no moment that Plaintiff's Mexican heritage may be *why* he speaks Spanish fluently, since obviously all fluent Spanish speakers are not Mexican.

As Plaintiff has not sufficiently alleged the essential elements of his race and national origin employment discrimination claims, they should thus be dismissed.

**B. Title VII Claim: Disparate Impact**

Plaintiff contends he was the victim of disparate impact discrimination because he was treated unfavorably for speaking Spanish, was given a Spanish test, and used his Spanish-language skills on the job but was not compensated for it. Doc. 22 at 6-8. Defendant argues that Plaintiff has not stated the necessary elements of a disparate impact claim. Doc. 27 at 14-15.

Disparate impact claims involve employment practices that are facially neutral but fall more harshly on one group and cannot be justified as a business necessity. *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996). A plaintiff claiming disparate impact must plead sufficient facts to show (1) the particular employment practice that caused the disparity and (2) an identifiable factor responsible for the alleged disparate impact. *Id.*

Plaintiff's allegations again fall short. Even if he has identified a facially neutral policy, to-wit, the requirement that at least one Spanish speaker work each shift, he does not identify a specific factor that causes a disparate impact under the policy on all employees who are Mexican nationals. Plaintiff's chief complaint is that he is the only one—not every employee of Mexican descent or nationality—who was made to work longer hours without additional compensation due to a dearth of available Spanish speakers. *See Garcia*, 97 F.3d at 813 ("It would, of course, be insufficient for a claim under Title VII if Garcia were the only pregnant woman adversely

4

affected; she must show that pregnant women as a group would be subject to this medical restriction.").

Because Plaintiff fails to state a factually plausible case of disparate impact discrimination, his claim should be dismissed.

### C. Title VII Claim: Hostile Work Environment

Plaintiff also claims Defendant created a hostile work environment because of Plaintiff's Mexican race and national origin. Doc. 22 at 4-5. Defendant argues Plaintiff has not stated the necessary elements for a hostile work environment claim because he has not alleged any instances of discriminatory harassment. Doc. 27 at 16.

A plaintiff claiming a hostile work environment under Title VII must plead that: (1) the plaintiff belongs to a protected group, (2) the plaintiff suffered unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Plaintiff's amended complaint fails to plausibly allege a claim under this standard. Notwithstanding that the alleged conduct does not rise to the level of harassment, it clearly was based not on Plaintiff's race or national origin but, as discussed *supra*, on Plaintiff's ability to speak Spanish. *See* Doc. 22 at 3 ("[P]laintiff would have to stay over every time if a Spanish speaker was needed on the next shift and plaintiff was the only Spanish speaker on his shift."). Plaintiff's amended complaint does not allege any instances of derogatory comments or actions based on his race or national origin.

Plaintiff's hostile work environment claim therefore fails and should be dismissed.

### D. DTPA Claim

In his amended complaint, Plaintiff added a new claim, alleging that Defendant violated the Texas Deceptive Trade Practices Act by using Plaintiff's language skills without his approval and without pay. Doc. 22 at 9. Defendant argues that because this claim was filed without the

5

Court's leave, it should be stricken. Doc. 27 at 10-11. Defendant argues in the alternative that it cannot be sued under the DTPA because it has governmental immunity. Doc. 27 at 11-12. Defendant is correct on both accounts: (1) Plaintiff did not request, and the Court did not grant, leave to file new claims in his amended complaint, *see* Doc. 21, and (2) even if this claim was permissibly filed, the Court would still lack the necessary subject matter jurisdiction to hear it.

Governmental immunity bars a suit against a Texas government entity unless the Texas Legislature has expressly consented to the suit. *See Levy v. City of Rio Grande City*, No. 3:04-CV-0381-B, 2006 WL 3831299, at *2 (N.D. Tex. Dec. 28, 2006) (Boyle, J.). Absent legislative consent, the trial court lacks the subject matter jurisdiction necessary to hear the suit. *Id*. The DTPA does not contain the clear and unambiguous language necessary to waive governmental immunity; the Texas Legislature has not consented to suit under the act. *See Dallas County v. Rischon Dev. Corp.*, 242 S.W.3d 90, 95 (Tex. App.—Dallas 2007) (concluding that the legislature did not express a clear and unambiguous waiver of governmental immunity under the DTPA).

Here, Defendant is a government entity—a city. The Texas Legislature has not consented to suits against a government entity under the DTPA, so the Court does not have the necessary subject matter jurisdiction to hear the claim. Plaintiff's DTPA claim should be dismissed.

### F. Leave to Amend

"As a general rule, a court should not dismiss a *pro se* complaint without affording the plaintiff the opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). However, the court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767-768 (5th Cir. 2009). Here, Plaintiff has previously been granted leave to amend to cure the identified defects in his pleading. Nevertheless, Plaintiff's claims for state and federal employment discrimination are still deficient and his DTPA violation claim is cannot be cured. Thus, the Court assumes Plaintiff has already

pled his best case. Granting additional leave to amend under these circumstances would be futile and cause needless delay.

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss Plaintiff's Amended Petition and Brief in Support*, Doc. 27, should be **GRANTED**. All of Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on February 9, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).